FILED
08/04/2021
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs May 3, 2021

**IN RE AHLEIGHA C.**

**Appeal from the Juvenile Court for Cocke County**
**No. TPR-06069A    Brad Lewis Davidson, Judge**

_____

**No. E2020-01683-COA-R3-PT**

_____

CARMA DENNIS MCGEE, J., dissenting.

Respectfully, I must dissent from the majority's decision to reverse the trial court's order terminating Father's parental rights. Based upon this Court's decisions in prior cases, I believe that there was clear and convincing proof that Father has

> failed to manifest, by act or omission, an ability and willingness to personally assume legal and physical custody or financial responsibility of the child, and placing the child in the person's legal and physical custody would pose a risk of substantial harm to the physical or psychological welfare of the child.

Tenn. Code Ann. §36-1-113(g)(14).

As our Supreme Court has explained, and the majority opinion correctly states, this ground requires clear and convincing proof of two elements.

> Two prongs must be proven by clear and convincing evidence to terminate parental rights under this statute: (1) the parent or legal guardian failed to manifest an ability and willingness to personally assume legal and physical custody or financial responsibility of the child; and (2) placing the child in the parent's legal and physical custody would pose a risk of substantial harm to the physical or psychological welfare of the child.

*In re Neveah M.*, 614 S.W.3d 659, 674 (Tenn. 2020).

I believe that the record contains clear and convincing evidence that father has "failed to manifest, by act or omission, an ability . . . to personally assume legal and physical custody or financial responsibility of the child." Tenn. Code Ann. § 36-1-

113(g)(14). When analyzing this ground in prior opinions, this Court has recognized that incarcerated parents do not have the ability to assume custody of their children. *See, e.g., In re Isabella W.*, No. E2019-01346-COA-R3-PT, 2020 WL 2070392, at *13 (Tenn. Ct. App. Apr. 29, 2020) ("Father does not have the present ability to assume custody of Isabella due to his incarceration; his testimony also makes clear that Father would not have for at least six months following his release date the ability to take physical custody of her."); *In re Jeremiah S.*, No. W2019-00610-COA-R3-PT, 2020 WL 1951880, at *8 (Tenn. Ct. App. Apr. 23, 2020) (citation omitted) ("Considering the foregoing, the evidence is more than sufficient to prove the first ground of failure to manifest a willingness and ability to assume custody or financial responsibility…. Mother has been incarcerated since March 22, 2017 – about half of Jeremiah's life and nearly all of Joseph's, evidencing a clear inability to assume custody and financial responsibility, despite any amount of willingness. As such, we conclude that DCS presented sufficient evidence to establish that Mother was not able and willing to assume physical or legal custody of the children."); *In re Eli S.*, No. M2019-00974-COA-R3-PT, 2020 WL 1814895, at *8 (Tenn. Ct. App. Apr. 9, 2020) ("[W]e agree with the trial court that Mother's history of drug abuse and both parents' repeated criminal conduct and resulting incarceration demonstrates that each lacks the ability to parent Eli."); *In re Ke'Andre C.*, No. M2017-01361-COA-R3-PT, 2018 WL 587966, at *11 (Tenn. Ct. App. Jan. 29, 2018) ("At the time of trial, there was no dispute that Mother and Father were both incarcerated and lacked the ability to assume custody of the Children.")

Likewise, the father in this case is incarcerated and unable to assume custody of the child. The father has been incarcerated since prior to the child's birth. The record shows that his earliest possible release date is May 28, 2022. Therefore, based on these limited but undisputed facts, I would find that there is clear and convincing evidence that he has "failed to manifest, by act or omission, an ability . . . to personally assume legal and physical custody or financial responsibility of the child" pursuant to Tennessee Code Annotated. § 36-1-113(g)(14).

Unlike my colleagues, I do not believe that this finding would equate a parent's incarceration with a "de facto basis" upon which to terminate parental rights. Instead, this finding recognizes that a parent's incarceration "evidenc[es] a clear inability to assume custody." *In re Jeremiah S.*, 2020 WL 1951880, at *8. The majority emphasizes that Father has only been incarcerated one time rather than engaging in "repeated misconduct." However, the fact remains that Father is not *able* to take custody of the child because he is incarcerated. The frequency of his incarceration may speak to other issues (e.g., lifestyle choices for "willingness" or best interest concerns), but it does not have a bearing on his "ability" to personally assume custody. He simply cannot care for a child while he is in jail, regardless of whether he is a repeat or first-time offender. According to the statute, the inability alone is enough to satisfy this prong. *See In re Neveah,* 614 S.W.3d at 677. In prior rulings, this Court has not made the reason for the inability determinative of the outcome of this factor. Regarding ability, we have consistently looked to the parent's "lifestyle and circumstances." *See In re Jaxx M.*, No. E2018-01041-COA-R3-PT, 2019

WL 1753054, at *9 (Tenn. Ct. App. Apr. 17, 2019). I do not think that the majority should expand this Court's prior rulings. Additionally, the majority's opinion may be read to create a defense to the "failure to manifest" ground simply due to a parent's incarceration. I do not believe that was the intention of the legislature when drafting this section.

Based upon prior caselaw, I would also find clear and convincing evidence that "placing the child in the [father's] legal and physical custody would pose a risk of substantial harm to the physical or psychological welfare of the child." Tenn. Code Ann. § 36-1-113(g)(14).

I cannot see that this case is substantively distinguishable from *In re Braelyn S.*, in which this Court affirmed the finding of a risk of substantial harm based on the lack of a relationship between the father and child. We stated:

> In determining that sufficient evidence existed as to this ground, the trial court found that placing Braelyn in Father's care would create a risk of substantial physical or psychological harm for the child. The trial court concluded that the risk of harm existed based on the lack of a relationship between Father and Braelyn, the failure to support or assume legal responsibility for the child, and the lack of custodial time that Father had with Braelyn. After a thorough review of the record, we agree. Here, Father conceded that reintroducing himself to Braelyn after more than five years apart would be difficult for the child. Braelyn has bonded and thrived in his current family situation. Although both parties are partially to blame for the situation, there can be no dispute that Father is a virtual stranger to the child. Other cases have held in similar situations that forcing the child to begin visitation with a near-stranger would make psychological harm sufficiently probable. See *In re Antonio J.*, No. M2019-00255-COA-R3-PT, 2019 WL 6312951, at *9 (Tenn. Ct. App. Nov. 25, 2019) (holding that substantial harm could be established when a child was removed from a home when very young and had nightmares out of fear of being removed from his foster family); *State v. C.H.H.*, No. E2001-02107-COA-R3-CV, 2002 WL 1021668, at *9 (Tenn. Ct. App. May 21, 2002) (holding that removal from the child's current family and placement with a near-stranger could constitute substantial harm). As Father recognizes the potential problems that could occur with a reintroduction to his son, we conclude that such interactions would create a substantial risk of harm for the child.

*In re Braelyn S.*, No. E2020-00043-COA-R3-PT, 2020 WL 4200088, at *17 (Tenn. Ct. App. July 22, 2020) *perm. app. denied* (Tenn. Dec. 10, 2020). This case does have some distinguishing facts. However, I submit that it is persuasive authority for our analysis. In *In re Braelyn*, the child was approximately six years old, had not seen his father for more than five years, and the father was a "virtual stranger" to the child. In that case the father did have an existing relationship with the child that is not present in this case.

In this case, the child was born on May 22, 2018 and was 2 years and 7 months old at the time of the trial. She came into custody when she was 10 months old. The case worker testified that the child had been in the same preadoptive foster home with her sister the entire time that she was in custody, which was almost two years. He also testified that she referred to her foster parents as her parents. The court further stated in its best interest findings that the child was in a "loving, caring home in which she is thriving." It is undisputed that she has never met Father. He has been incarcerated since before she was born and his earliest release date is May 28, 2022. The child will be four years old then, and will have never met the father. I do not think that this analysis is equating incarceration with substantial harm. It is rather about the resulting fact that this father is not just a "virtual stranger," but a total stranger to the child.

Additionally, the record contains a recent affidavit which states the child is "generally healthy" and up to date on immunizations. It appears from the affidavit that the foster parents take the child to her medical appointments. While the trial court was not very detailed in its findings, it did find that the child was in a "loving, caring home." Based upon the proof, I think it is fair to conclude that the child is in a supportive and stable home with her biological sibling where she receives adequate care and attention. When DCS became involved in the case, the child had a skull fracture due to improper care (albeit while in Mother's custody). Now, the evidence (although limited) indicates that she is "healthy" in the foster home. It would have been helpful, but ultimately I do not feel absolutely necessary, for the witnesses to expressly state that the foster home is "loving" or "caring." Based on the facts that the child has remained in the same foster preadoptive home for practically her entire life, she refers to the foster parents as her parents, and she appears to be receiving quality care, the inference that it is a "loving, caring" home does not seem to be unsupported. I believe that this Court's reasoning in other cases also supports a finding that DCS met its burden of proof on the second prong of the test. See *In re Sylvia H.*, No. E2020-01009-COA-R3-PT, 2021 WL 1098630, at *8 (Tenn. Ct. App. Mar. 23, 2021). ("Father has been incarcerated for most of Sylvia's life as a result of his criminal behavior. . . . [T]he child does not know who Father is and does not ask about him. Removing Sylvia from her current family and placing [her] with a near-stranger of a parent would cause the child emotional harm.") (citation omitted). As this Court recently recognized in *In re Brianna B.*, No. M2019-01757-COA-R3-PT, 2021 WL 306467, at *6 (Tenn. Ct. App. Jan. 29, 2021):

By way of illustration, forcing a child to begin visitation with a near-stranger would make psychological harm sufficiently probable. *See In re Antonio J.*, No. M2019-00255-COAR3-PT, 2019 WL 6312951, at *9 (Tenn. Ct. App. Nov. 25, 2019) (holding that substantial harm could be established when a child was removed from a home when very young and had nightmares out of fear of being removed from his foster family); *State v. C.H.H.*, No. E2001-02107-COA-R3-CV, 2002 WL 1021668, at *9 (Tenn. Ct. App. May 21, 2002) (holding that removal from the child's current family and placement

with a near-stranger could constitute substantial harm). Or placing a child with a parent who engaged in repeated criminal conduct that required incarceration would put a child at risk of substantial physical or psychological harm. *In re O.M.*, No. E2018-01463-COA-R3-PT, 2019 WL 1872511, at *4 (Tenn. Ct. App. Apr. 26, 2019) (quoting *In re Amynn K.*, No. E2017-01866-COA-R3-PT, 2018 WL 3058280, at *15 (Tenn. Ct. App. June 20, 2018)).

Therefore, for the foregoing reasons, I would affirm the trial court's finding that the ground for termination of Father's parental rights as stated in Tenn. Code Ann. §36-1-113(g)(14) has been proven by clear and convincing evidence and proceed to the best interest analysis in this case.

_____
CARMA DENNIS MCGEE, JUDGE